UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVE EASLEY,                          Case No. 1:14-cv-891

    Plaintiff,

                                        Beckwith, J.
vs.                                     Bowman, M.J.

KRISTAL LITTLE, et al.,

    Defendants.

## REPORT AND RECOMMENDATION

Plaintiff, an inmate at the Southern Ohio Correctional Facility, proceeding *pro se* and *in forma pauperis*, has filed a civil complaint pursuant to 42 U.S.C. § 1983. (Doc. 1). On December 22, 2014, Plaintiff filed a Complaint alleging that on or about January 19, 2014, Defendant Lt. Little caused him to sustain an unprovoked use of Oleoresin Capsicum ("OC") spray; that Defendant Lt. Haywood failed to protect him from the OC spray (Doc. 7), and that: Defendant HCA Clagg RN, unexplainably prevented him from taking a shower to "decontaminate." *Id*. Plaintiff further contended that Clerk Sarah Warren, Screening Publication Committee Member Dana Judd, and mail room supervisor Lt. Frazier inappropriately banned Plaintiff's pornographic mail. *Id*. On the same date, December 22, 2014, this Court recommended the dismissal of Defendants Warren, Judd and Frazier for Plaintiff's failure to state of claim upon which relief may be granted. (Doc. 8). On January 20, 2015, the District Court adopted this Court's Recommendation and dismissed the aforesaid Defendants. (Doc. 10).

Defendants now move for summary judgment, asserting *inter alia*, that they acted reasonably under the circumstances and are therefore entitled to qualified

immunity. The undersigned agrees.

**I.     Background and Facts**

On January 19, 2014, at approximately 9:17 PM., Lt. Little reported to J3 block of SOCF to escort another inmate off the unit. (Doc. 50, Exhibit C and Exhibit B, Declaration of Lt. Little, ¶ 4). When Lt. Little arrived on J3, Plaintiff started yelling from his cell, "Krystal, come down to this cell, if you don't I'm going to fuck up one of these officers. You guys keep letting these officers spray us for no reason." (Doc. 50, Exhibit C, p. 1 of 4, Exhibit B, ¶ 4).

After Lt. Little completed her escort of the other inmate, she, along with Lt. Gary Haywood, returned to Plaintiff's cell to escort him to segregation for threatening to cause harm to the "other officers." (*Id.*, Ex. C, Ex. B at ¶ 6 and Exhibit D, ¶ 4, Declaration of Lt. Gary Haywood). Plaintiff became "irate" and refused to turn around to be handcuffed, stating, "get the team Kristal because I'm not coming out. You all let these officers spray us for nothing." (Doc. 50, Ex. C, p. 1; Ex. B., ¶ 6). Lt. Haywood and Lt. Little then exited the range to prepare for a planned use of force situation in order to remove Plaintiff from his cell. (Doc. 50, Ex. B, ¶ 7, Ex. D., ¶ 5).

In a planned use of force situation, the entire incident must be videotaped and a negotiator must be brought in to talk with the inmate. (Doc. 50, Ex. B, ¶ 7, Ex. D, ¶ 5; Exhibit E, Use of Force policy and procedure, 63-UOF-01(VI)(F), p. 8 of 10 as). Lt. Little and Lt. Haywood asked Correction Officer Harper to operate the video camera and Correction Officer B. Brown to perform negotiations. (Doc. 50, Exhibit F). Upon return to Plaintiff's cell with both the cameraman and negotiator, Plaintiff then complied with Lt. Little's order to turn around and cuff up. (Handheld Camera Video,

2

manually filed February 3, 2016, MAH00299, at 1:28; Ex. B,¶8; Ex. D, ¶ 6 ). Plaintiff was then secured and removed from his cell. (Doc. 50, Ex. MAH00299, at 1:28 through 2:30).

During an escort, an inmate is to walk straight ahead and at all times face forward. (Doc. 50, Ex. B., ¶ 9, Ex. D, ¶ 8). Such positioning prevents injury to a staff person, by immobilizing an inmate's ability to turn quickly onto an officer which risks exposure to being head butted, spit upon, tripped or struck by the inmate. (Doc. 50, Ex. B, ¶ 15).

During his escort, Plaintiff diverted away from the escorting team and pulling a concealed package out of his pants and placing the same in a mailbox. (MAH00299, at 2:12). In accordance with the Response to Resistance Continuum, Lt. Little ordered Plaintiff to return to the escort area (MAH00299, at 2:19, Handheld Camera Video, manually filed February 3, 2016). When Plaintiff resisted, Lt. Little, utilized physical commands as well as the assistance of the negotiator, Officer B. Brown, to regain control of Plaintiff and proceed with the escort. (Doc. 50, Ex. A, Contiuum; Ex. G. Officer B. Brown's Employee Statement, p. 1 of 2; Ex. B, Little dec., ¶ 11; Ex. D, Haywood Dec., ¶ 11).

Correctional Officer M. Brown also witnessed Inmate Easley's diversion away from the escorting team, and ultimate refusal to comply with Lt. Little's direct order to proceed towards the J2 Segregation Unit. (Doc. 50, Ex. H. p. 1 of 2). Officer M. Brown took over Inmate Easley's right arm from Lt. Little. (*Id.*) Upon entering the J2 strip cage area (where officers initially hold inmates requiring segregation to make sure they are not harboring contraband). Plaintiff began turning towards Lt. Little. (See

3

Doc. 50, Ex. J and I; Ex. F, p. 1;Ex. G, p. 1).

Assisting officer, M. Brown, gave Plaintiff orders to stop trying to turn towards the officers, which Plaintiff refused to follow. (Doc. 50, Little declaration, Ex. B., ¶ 12,.;Ex. C., p. 1, Ex. F., p. 1; Ex. G., p. 1, Ex. H., p. 1 and Ex. I, p. 1 and Ex. J., p. 1; MAH00299, at 2:30, Handheld Camera Video, manually filed February 3, 2016). Inmate Easley responded by verbally threatening the officers, stating "You better stop touching me." (MAH00299, at 2:33)

Lt. Little warned Plaintiff that if he did not stop refusing to abide by the officers' orders, she would spray him with OC spray. Plaintiff responded by stating, "I don't give a shit about that spray" and continued trying to turn onto Officer Brown. (MAH00299, at 2:35). Lt. Little then administered OC spray to Plaintiff's right side.[1] Following the burst of OC spray, Plaintiff became cooperative and Officer Brown was able to back out of the cell without injury. (Ex. B., p. 17; Supervisor's Use of Force Summary Report, attached hereto as Exhibit L, p. 1-2 of 3).

Per procedure, medical and mental healthcare staff was notified and upon Plaintiff's assertion that he was suicidal, placed him on constant watch precautions (Id., pp. 1-3, of 3). Thereafter, Plaintiff was examined by medical staff who noted only "red irritated eyes." (Doc. 50, Exhibit M). At the time he was examined on January 19, 2014, Plaintiff made no mention of "bleeding peeling eyelids" which he now claims in his Complaint. (Doc #: 7, PAGEID #: 74). In addition, Plaintiff was offered a shower by

---

[1] Notably, at the time of this incident, Lt. Little was aware that Plaintiff had previously assaulted staff and other inmates. The record indicates that in 2008, Plaintiff took off one of his handcuffs and doubled it up on the other arm, thereby creating a club with his arm. (Doc. 50 Ex. K). Furthermore, Lt. Little was aware that during a prior trial involving Inmate Easley, the District Court, cognizant that Inmate Easley had become so volatile a correctional officer "sustained neurological injuries which were so severe that he can no longer work as a correctional officer," ordered Inmate Easley to appear in a stun belt, leg shackles, wrist restraints affixed to a belly chain, with correctional officers sitting between him and his counsel. (Ex. K., p. 10, FN 3 and p. 11).

4

Officers B. Hoover and J. Richardson, which Plaintiff refused. (Doc. 50, Ex. I, p. 1 and Ex. J., p. 1).

Two days later on January 21, 2014, Plaintiff complained that "[m]y skin is falling off eye and swell sore [sic] I can't see out my left eye." (Doc. 50, Exhibit N). As the record evidence establishes, Plaintiff was immediately seen in the medical department on the same date, January 21, 2014. (Doc. 50, Exhibit O, Interdisciplinary Progress Notes (IPN), pp. 1-3 of 6; Attending physician, Dr. Faisal Ahmed's Chronic Disease Follow Up note, p. 4 of 6; Physician Orders, p. 5 of 6; and Inmate Easley's Release of Responsibility form, regarding his refusal for any follow-up care on February 5, 2014, p. 6 of 6).

According to Dr. Ahmed, he saw and examined Inmate Easley on January 21, 2014, as a part of his chronic care for high blood pressure and anemia. (Doc. 50, Exhibit P, ¶ 7, Declaration of Dr. Faisal Ahmed). Dr. Ahmed asserts that Easley did not make any complaints regarding his eye, and that Dr. Ahmed specifically inquired of all complaints, per his documentation, that Inmate Easley may have had. (*Id.* at ¶ 8). According to Dr. Ahmed, the only issues Inmate Easley raised on January 21, 2014, with him included; "[s]tates he is a black Jew who feels better eating Kosher meals, denies pooping blood and denies any other complaints." (Doc. 50, Ex. P, ¶ 8; Ex. O, Chronic Care Note, p. 4 of 6).

On January 21, 2014, the Rules Infraction Committee (RIB) found Plaintiff guilty of Disobedience of a Direct Order, in violation of Rule 21. (Doc. 50, Ex. S, See Inmate Rules of Conduct, pursuant of OAC § 5120-9-06, pp. 3-4 of 8; Disposition of Rules Infraction Board, p. 7 of 8; and the Warden's affirmation, p. 8 of 8). Plaintiff's

5

disposition was 15 days in Disciplinary Control and to remain on the highest security level of 4B. The penalty was "imposed to promote more positive behavior." (Id., p. 7 of 8). On March 3, 2014, the Warden determined that the amount of force that was used was "justified" and that the forced used was not "inappropriate and/or excessive." (Doc. 50, Ex. S).

Plaintiff, however, contends that Little used excessive force against him on or about January 19, 2014 when she maced him while he was handcuffed and shackled and posed "no threat." (Doc. 7., pp. 5, 7,). Plaintiff claims that Little maced him because he had called her "Kristal" and because he had filed a lawsuit against "her partner," defendant Haywood. *Id.*, p. 7. Plaintiff also alleges that Little and Haywood, who was present when plaintiff was maced by Little, refused to allow him to remove the mace that was in his mouth and eyes or "to decontaminate." (*See Id.*, p. 7) He further contends that he was denied medical assistance "to remove and decontaminate" at the time of the incident. *Id.,* pp. 7-8 Plaintiff claims that, because he was not permitted to "decontaminate," he slept "in burning mace for several days" and that, as a result, he suffered "second degree burns" to his eyelids, which "ble[]d and peeled," as well as "vision loss." *Id.*, p. 7.

Upon careful review, the undersigned finds that there is neither a genuine issue of material fact nor has Plaintiff articulated a claim which defeats the Defendants' qualified immunity. Accordingly, Defendants are entitled to summary judgment as a matter of law.

II.  Analysis

A. Standard of Review

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 24748, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.,* 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party " 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.' " *Harris v. Adams,* 873 F.2d 929, 931 (6th Cir.1989) (quoting *Sixty Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Satterfield v. Tennessee,* 295 F.3d 611, 615 (6th Cir.2002); *Little Caesar Enterprises, Inc. v. OPPC, LLC,* 219 F.3d 547, 551 (6th Cir.2000).

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street,* 886 F.2d at 1478 (citing *Celotex* and *Anderson* ). A principal purpose of summary judgment is to

7

isolate and dispose of factually unsupported claims or defenses. *Celotex,* 477 U.S. at 323–24. The moving party need not support its motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir.1996) (citing *Celotex Corp.,* 477 U.S. at 325). Nor must the Court search the entire record for material issues of fact. *Street,* 886 F.2d at 1479–80. The court need only determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Defendants motion for Summary Judgment

Defendants' maintain that Plaintiff's claims fail as a matter of law because he suffered *de minimis* injuries and he has offered no objective evidence to support his version of the facts. Defendants further contend that they are entitled to qualified immunity because there was no clear violation of a constitutional right. Plaintiff asks the Court to deny Defendants' motion, asserting that genuine issues of material fact exist thereby precluding summary judgment.

### 1. Qualified Immunity

The Court must first resolve the issue of whether Defendants are entitled to qualified immunity for their actions in this case. *See Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Qualified immunity protects government officials "from liability for

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz,* 533 U.S. 194, 200–201 (2001). The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably ." *Pearson,* 555 U.S. at 231.

Qualified immunity "'gives ample room for mistaken judgments by protecting 'all but the plainly incompetent or those who knowingly violate the law.' " *Hunter v. Bryant,* 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 343, 341 (1986)). *See also Dorsey v. Barber,* 517 F.3d 389, 394 (6th Cir.2008). Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson,* 555 U.S. at 231.

Once a defendant raises a qualified immunity defense, the plaintiff must satisfy a two pronged analysis: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of the parties' submission, was the right clearly established at the time of the injury? *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In its discretion, the court

9

may initially address either of these questions in light of the circumstances of the particular case before it in resolving an officer's qualified immunity claim. *Pearson,* 555 U.S. at 236–37.

Plaintiff bears the burden of showing that a right is clearly established. *Everson v. Leis,* 556 F.3d 484, 494 (6th Cir.2009). Defendant, however, bears the burden of showing that the challenged actions were objectively reasonable in light of the law existing at the time. *Id.*

In determining whether a right is "clearly established" for purposes of the qualified immunity inquiry, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier,* 533 U.S. at 202. This question must be answered "in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (quoting *Saucier,* 533 U.S. at 201). The unlawfulness of the officer's conduct must be apparent in light of pre-existing law. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." *Cameron v. Seitz,* 38 F.3d 264, 272 (6th Cir.1994) (citing *Mumford v. Zieba,* 4 F.3d 429, 432 (6th Cir.1993)).

Summary judgment based on qualified immunity is not appropriate if there is a factual dispute or genuine issue of material fact "involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Rich v. City of Mayfield Heights,* 955 F.2d 1092, 1095 (6th Cir.1992).

**2. Defendants acted reasonably under the circumstances and are therefore entitled to Qualified Immunity**

To decide whether Plaintiff has presented evidence of a violation of his constitutional rights, the Court must first determine the source of the claimed right. *Phelps v. Coy,* 286 F.3d 295, 299 (6th Cir.2002). Plaintiff's complaint alleges that Defendants subjected him to excessive force by spraying mace in his face. Plaintiff's claims implicate the Eighth Amendment prohibition against "cruel and unusual punishments." U.S. Const. amend. VIII; *see also Farmer v. Brennan,* 511 U.S. 825 (1994).

To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of state law. *Sigley v. City of Parma Hts.,* 437 F.3d 527, 533 (6th Cir.2006) (citing *West v. Atkins,* 487 U.S. 42, 48 (1988)). Prisoners are protected from the use of excessive force by the Eighth Amendment. *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The Eighth Amendment standard focuses on the official's "obdurancy and wantonness" and asks "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 319–21. The test for whether the use of force violates the Eighth Amendment requires a court to determine if the defendant's conduct caused the "unnecessary and wanton infliction of pain." *Moore v. Holbrook,* 2 F.3d 697, 700 (6th Cir.1993) (citation omitted). In other words, [t]o ascertain whether excessive force was used under the Eighth Amendment, the court must determine whether the force was applied in a good-faith effort to maintain

or restore discipline, or maliciously and sadistically to cause harm. Such a claim has both an objective and a subjective component. The objective component requires that the pain be serious. The subjective component requires that the offending, non-penal conduct be wanton. *Griffin v. Hardrick,* 604 F.3d 949, 953–54 (6th Cir.2010) (quoting *Watkins,* 1996 WL 499094, at *2 (citations omitted).

A constitutional excessive force claim is analyzed under an "objective-reasonableness standard, which depends on the facts and circumstance of each case viewed from the perspective of a reasonable officer on the scene." *Miller v. Sanilac Cnty.,* 606 F.3d 240, 251 (6th Cir.2010) (citing *Graham v. Connor,* 490 U.S. 386, 395–96 (1989)). "The first step in assessing the constitutionality of [an officer's] actions is to determine the relevant facts." *Scott,* 550 U.S. at 378, 127 S.Ct. 1769. To the extent there is disagreement about the facts, we must review the evidence in the light most favorable to the plaintiff, and draw all inferences in his favor. *McKenna v. Edgell,* 617 F.3d 432, 437–38 (6th Cir.2010) (citing *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 900 (6th Cir.2004)).

As the Supreme Court has explained, "whenever prison officials stand accused of using excess physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley;* whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 6–7; *Wilkins v. Gaddy,* 130 S.Ct. at 1178–1179 ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts."). Thus, " '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ...

whether or not significant injury is evident.' " *Williams v. Curtin,* 631 F.3d at 383 (*quoting Hudson,* 503 U.S. at 9).

In order to prevail on his construed Eighth Amendment claim in this case, Plaintiff must prove not only that the use of the OC spray was objectively unreasonable, but that it was applied "maliciously and sadistically for the very purpose of causing harm." *Williams v. Curtin,* 631 F.3d at 383 (quoting *Hudson,* 503 U.S. at 6 (internal quotation marks omitted)). "Courts may consider "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Id.* (quoting *Whitley,* 475 U.S. at 321). Given the evidence produced by Defendant concerning the circumstances under which the pepper spray was deployed, the undersigned concludes as a matter of law that Plaintiff has failed to demonstrate either the objective or the subjective elements of his claim.

Construing the facts on summary judgment in the light most favorable to the non-moving party usually means adopting the plaintiff's version of the facts. *Scott,* 550 U.S. at 378, 127 S.Ct. 1769. However, the Supreme Court clarified in *Scott* that facts must be viewed in the light most favorable to the non-moving party "only if there is a 'genuine' dispute as to those facts." *Id.* at 380, 127 S.Ct. 1769 (quoting Fed.R.Civ.P. 56(c)). In *Scott,* the Supreme Court held that a police officer was entitled to summary judgment on a motorist's claim that the officer used excessive force in ramming his car after a high-speed chase, notwithstanding the fact that the motorist and the officer gave conflicting testimony regarding the events in question. *Id.* at 386, 127 S.Ct. 1769. In *Scott,* the conflicting testimony did not create an issue of fact for trial

because the record included a videotape capturing the police chase which clearly contradicted the motorist's contention that he was driving carefully. *Id.* at 379, 127 S.Ct. 1769. As noted by the Supreme Court, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Id.* at 380, 127 S.Ct. 1769.  Such is the case here.

Here, Defendants correctly assert that Lt. Little was entitled to use force to maintain order. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  As seen in the video, Lt. Little's use of force was **<u>one</u>** burst of OC delivered to the right side of Inmate Easley, after he failed to comply with orders to turn around and moved towards both Lt. Little and Officer Brown, as witnessed by additional correctional staff. (Doc. 50, Exhibits D, G, H, I, and J; MAH00299).  Although Defendants describe Plaintiff's actions as "aggressive" and "threatening", the video does not fully substantiate such claims. However, Plaintiff's actions, while not egregious, still conveyed his desire to remain uncooperative and disobey the officer's orders.

Accordingly, under these circumstances and in consideration of the fact that the officers were aware of Plaintiff's prior abuses towards staff at SOCF, the officers did not act maliciously or sadistically in using mace to secure Plaintiff's compliance and to restore order-as several cases confirm. *See, e.g., Combs v. Wilkinson,* 315 F.3d 548, 557 (6th Cir. 2002) (affirming summary judgment in favor of prison official and noting "that the use of mace to control a prison inmate is not malicious or sadistic").  Notably, a short burst of pepper spray is not disproportionate to the need to control an inmate who

has failed to obey an order. *See Jennings v. Mitchell,* 93 F. App'x 723, 725 (6th Cir. 2004) (holding that officers did not violate an inmate's Eighth Amendment rights when they pepper sprayed him after he refused to obey orders); *Thomas v. Greene,* No. 99-3179, 1999 U.S.App. LEXIS 34054, 1999 WL 1253102 (6th Cir. Dec. 17, 1999) (affirming dismissal of prisoner's excessive force claim upon finding that he was uncooperative and threatening prior to being pepper sprayed); *White v. Fowler,* 881 F.2d 1078 (6th Cir. 1989) (holding that officer was entitled to summary judgment on Plaintiff's excessive force claim even though Plaintiff was shackled when officer sprayed him with mace on a bus because the officer needed to restore "discipline and security to the bus"); *Clement v. Gomez,* 298 F.3d 898, 904 (9th Cir. 2002) (holding that the use of two five-second bursts of pepper spray was not excessive when used to break up a fight among inmates after they had repeatedly ignored verbal commands to stop); *Baldwin v. Stalder,* 137 F.3d 836, 838, 841 (5th Cir. 1998) (holding that jail guards did not use excessive force when they sprayed a two-second burst of chemical mace into a bus filled with prisoners who had continued jumping on the seats, spitting at officers outside the bus, rocking the bus, and otherwise causing a disturbance after three times being told to stop); *Williams v. Benjamin,* 77 F.3d 756, 762-63 (4th Cir. 1996) (holding that the use of chemical mace was not excessive when a prisoner disobeyed an order to stop throwing water at a guard and then questioned the guard's second order to remove his arm from his cell's food service window); *Jones v. Shields,* 207 F.3d 491, 495-96 (8th Cir. 2000) (holding that correctional officer's use of a pepper-based chemical spray resulted in *de minimus* injury and was not "repugnant to the conscience of mankind" when used to subdue a "recalcitrant prisoner" locked in his cell or in handcuffs).

Next, despite Plaintiff's allegations to the contrary, Plaintiff received prompt and adequate medical care following the OC incident. Notably, immediately after the incident, Plaintiff was examined by medical staff who noted only "red irritated eyes." (Doc. 50, Exhibit M). At the time he was examined on January 19, 2014, Plaintiff made no mention of "bleeding peeling eyelids." (*See* Doc 7). In addition, Plaintiff was offered a shower by Officers B. Hoover and J. Richardson, which Plaintiff refused. (Doc. 50, Ex. I, p. 1 and Ex. J., p. 1).

Two days later on January 21, 2014, Plaintiff complained that "[m]y skin is falling off eye and swell sore [sic] I can't see out my left eye." (Doc. 50, Exhibit N). As the record evidence establishes, Plaintiff was immediately seen by a nurse in the medical department at 9:25 a.m. on January 21, 201 (Doc. 50, Ex. O, p. 1). That same day, Dr. Ahmed examined Inmate Easley, as a part of his chronic care for high blood pressure and anemia. (Doc. 50, Declaration of Dr. Faisal Ahmed, Exhibit P, ¶ 7). As noted above, at that time, Plaintiff not make any complaints regarding his eye, and Dr. Ahmed specifically inquired of all complaints, per his documentation, that Inmate Easley may have had. (Ex., P., ¶ 8). According to Dr. Ahmed, the only issues Inmate Easley raised on January 21, 2014, with him included; "[s]tates he is a black Jew who feels better eating Kosher meals, denies pooping blood and denies any other complaints." (Ex. P, ¶ 8; Ex. O, Chronic Care Note, p. 4 of 6).

Plaintiff returned to the medical department the next day, where he complained about eye irritations. Upon examination, Dr. Ahmed determined that Plaintiff had an abrasion of his left eye and prescribed antibiotic ophthalmic ointment to be applied to the affected area. (Doc. 50, Ex. 9, ¶). However, Dr. Ahmed also stated:

> I do not find it medically reasonable that OC spray employed on Inmate Easley on January 19, 2014, resulted in an abrasion to the canthus of his eye on January 22, 2012, especially where he failed to bring it to my attention in any manner during the January 21, 2014 examination.

*Id.* at ¶ 10.

Such evidence, coupled with the relatively minor nature of Plaintiff's injuries suggests that Defendant Little's force was "applied in a good-faith effort to maintain or restore discipline" and not "maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 6-7. As such, Plaintiff has failed to establish that he suffered a deprivation of any clearly established statutory or constitutional right that a reasonable official would understand violated the same. Therefore, the Defendants are immune from Plaintiff's claims for excessive force and are entitled to judgment as a matter of law.[2]

### III. Conclusion

For these reasons, **IT IS THEREFORE RECOMMENDED THAT** Defendant's motion for summary judgment (Doc. 50) be **GRANTED,** all pending motions be **DENIED as MOOT** (Docs. 52-55) and this case be **TERMINATED** on the active docket of the Court.

    *s/ Stephanie K. Bowman*
    Stephanie K. Bowman
    United States Magistrate Judge

---

[2] Plaintiff also appears to be asserting a claim for deliberate indifference to his medical needs. However, such a claim was not alleged in Plaintiffs complaint. In any event, the record clearly established that Plaintiff received adequate medical care following the events of January 19, 2014.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVE EASLEY,

    Plaintiff,

vs.

KRISTAL LITTLE, et al.,

    Defendants.

Case No. 1:14-cv-891

Beckwith, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).